NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-2927 and 11-1175
_____

UNITED STATES OF AMERICA

v.

WILLIAM BASKERVILLE,
Appellant
_____

Appeals from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 3-03-cr-00836-001)
District Judge: Honorable Joel A. Pisano
_____

Argued September 21, 2011

Before:  RENDELL, AMBRO and CHAGARES, <u>Circuit</u> <u>Judges</u>.

(Opinion Filed: October 13, 2011)
_____

Mark A. Berman, Esq.    **[ARGUED]**
Hartmann, Doherty, Rosa & Berman
65 Route 4 East
River Edge, NJ  07661
   *Counsel for Appellant*

Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street,
Room 700
Newark, NJ  07102

Glenn J. Moramarco, Esq.    **[ARGUED]**
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street
P.O. Box 2098, 4th Floor
Camden, NJ  08101
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant William Baskerville ("Baskerville") was sentenced to life in prison for conspiring to murder a witness, conspiring to retaliate against an informant, and possessing and distributing drugs.

Baskerville contends that the District Court erred by:  (1) rejecting his claim that the prosecution used its peremptory challenges on account of race in violation of the Equal Protection Clause; (2) admitting the murdered informant's statements pursuant to the forfeiture-by-wrongdoing exception to the ban on hearsay;[1] (3) not *sua sponte* overturning the two convictions related to murder for insufficiency of the evidence with respect to his intent; and (4) denying his motion for a new trial because the prosecution did not disclose evidence favorable to the defense.  Each strand of his appeal, however, lacks a basis either in law or in the extensive record below.

Accordingly, we will affirm Baskerville's conviction and sentence.

_____

[1] Although Baskerville also argues that the District Court erred by admitting the same statements pursuant to the co-conspirator exception to the ban on hearsay, a thorough review of the record demonstrates that it admitted them pursuant only to the forfeiture-by wrongdoing exception discussed below.

2

## I.  Background

Since we write only for the parties, our review of the facts and procedural history is limited to items relevant to our decision regarding the issues presented on appeal.

Federal law enforcement officials enlisted the help of Kemo McCray ("McCray") in their investigation of a New Jersey drug ring that included Baskerville.  McCray worked as a paid informant, making numerous controlled purchases of drugs from Baskerville between February and November of 2003.  Based upon reports and recordings of his interactions with McCray, Baskerville was eventually arrested and charged with participating in a drug distribution conspiracy.  Prior to Baskerville's trial on the drug conspiracy charges at which he was to testify, McCray was shot and killed.  The Government then also charged Baskerville with ordering McCray's murder, alleging that through his attorney, Paul Bergrin ("Bergrin"), Baskerville directed associates of his to kill McCray.

During jury selection, the District Court and parties settled on a venire of fifty-two potential jurors.  The prosecution exercised peremptory challenges to strike four of the five African American venirepersons.  The defense objected, claiming that the prosecutors impermissibly used peremptory challenges to prevent African Americans from being seated on the jury.  *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that the use of peremptory challenges on account of race violates the Equal Protection Clause).  In response, the prosecution volunteered explanations for its use of peremptory challenges principally focused on the stricken jurors' attitudes toward the death penalty and relation to convicted criminals.  Defense counsel did nothing to challenge the

proffered explanations and the District Court overruled defense counsel's objection, finding that the prosecution's reasons were race-neutral, credible, and not pretextual.

Prior to trial, the prosecution filed a motion in limine seeking to introduce statements made by McCray while alive, pursuant to the forfeiture-by-wrongdoing exception to the ban on hearsay set forth in Federal Rule of Evidence ("FRE") 804(b)(6). Rather than hold a pretrial evidentiary hearing to determine whether the exception's elements were met, as defense counsel requested, the District Court reviewed the prosecution's extensive proffer of evidence connecting Baskerville to McCray's murder. The District Court then indicated that it would admit the statements subject to the prosecution's making of the necessary connection at trial. Shortly before the end of trial, the District Court ruled definitively that the prosecution had made the necessary showing to admit McCray's statements under FRE 804(b)(6).

The District Court so ruled based upon evidence that the prosecution introduced in support of the charges against Baskerville related to McCray's murder. That evidence consisted primarily of testimony by the gunman, Anthony Young, who testified that Baskerville had Bergrin transmit McCray's identity as an informant to several associates and told one associate to act quickly in killing McCray or else Baskerville would lose the case. Young understood Baskerville to have instructed the group to kill McCray. Baskerville's cellmate corroborated Young's understanding with testimony that Baskerville admitted lying to F.B.I. agents when he denied having McCray killed.

4

The jury found Baskerville guilty of all offenses with which he was charged, including one count of conspiring to murder a witness, one count of conspiring to retaliate against an informant, and several counts related to drug trafficking.

Baskerville timely appealed his conviction to this Court. Just before argument, the Government sought a remand to the District Court upon discovering voir dire notes it considered pertinent to the *Batson* issue. We obliged and, on remand, in addition to supporting his *Batson* objection with the voir dire notes, Baskerville made a motion for a new trial, claiming that the Government violated his due process rights by failing to disclose that Bergrin participated in the murders of witnesses against other clients of his in cases unrelated to Baskerville's. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that suppression of evidence favorable to an accused that is material to guilt or punishment violates due process).

The District Court issued an opinion that contained a more detailed explanation of its rejection of Baskerville's *Batson* objection at trial, and also concluded that the voir dire notes did not undermine its denial of that objection. It also denied Baskerville's motion for a new trial, finding that the prosecution did not commit a *Brady* violation because the purported *Brady* evidence was not favorable to the defense, and not material to Baskerville's guilt.

The instant appeal followed.

## II. *Batson* Claim

Having failed to respond to the prosecution's race-neutral explanations at trial, Baskerville argues on appeal that they were pretextual. We refuse to fault the District

Court for failing to support Baskerville's bald *Batson* claim on its own and, in any event, find the evidence Baskerville now presents in aid of his claim unconvincing.

In *Batson,* the Supreme Court held that "the Equal Protection Clause forbids [a] prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89. The adjudication of a *Batson* violation proceeds in three steps:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (internal citations omitted). Though the prosecution must produce a race-neutral reason for its strike at the second step, the burden of persuasion "'rests with, and never shifts from, the opponent of the strike.'" *Hardcastle v. Horn*, 368 F.3d 258, 258 (3d Cir. 2004) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam)).

District court determinations as to discriminatory intent are findings of fact reviewed only for clear error because trial judges are best-positioned to evaluate the credibility of prosecutors' race-neutral explanations, which is the primary focus of the third step in any *Batson* analysis. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). Unpreserved *Batson* objections are reviewed for plain error. *See Gov't of Virgin Islands v. Forte*, 806 F.2d 73, 76 (3d Cir. 1986). Here, we will review the District Court's ruling

6

for plain error because defense counsel sat silent after the Government stated its reasons for exercising peremptory challenges to which defense counsel objected.[2]

Baskerville urges that the District Court should have concluded that the Government's explanations for striking four of the five potential African American jurors were pretextual because it did not use peremptory challenges to strike similar white jurors and the explanations themselves lacked support in the record. Yet Baskerville did not make either of these arguments to the District Court upon the Government's volunteering responses to his *Batson* objection.

We fail to find any error, let alone plain error, that would lead us to disturb the District Court's ruling that the prosecutor's race-neutral reasons were credible. To start, the District Court did not plainly err by failing to compare jurors *sua sponte* before deeming the prosecution's race-neutral explanations credible. The third step in the *Batson* analysis calls upon the District Court to determine "whether the opponent of the strike has *proved* purposeful racial discrimination." *Purkett*, 514 U.S. at 767 (emphasis added). The *Batson* framework, then, squarely places the ultimate burden of persuasion on the challenger, not the District Court. *See Hardcastle*, 368 F.3d at 258. This is not to suggest that the challenger necessarily must rebut the prosecution's race-neutral reasons

---

[2] Plain error is "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). It constitutes "only particularly egregious errors . . . that seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15 (1985) (internal quotation marks omitted). The Government urges that all objections are waived when the defense fails to comment on the Government's proffered race-neutral reasons, such that we cannot consider them. We have held, however, that the use of peremptory challenges may nonetheless be reviewed for plain error. *See Forte*, 806 F.2d at 76.

7

to succeed on a *Batson* claim.  Rather, it is an acknowledgement that the challenger risks not satisfying his burden of proving discriminatory intent if the court reasonably concludes that the reasons, in and of themselves, are credible and not pretextual.  *See, e.g.*, *United States v. Rodriguez,* 178 Fed. App'x 152, 156-57 (3d Cir. 2006) (finding no error in the denial of defendant's *Batson* objection where she failed to challenge the Government's race-neutral reasons and therefore could not satisfy her burden).

Here, the District Court did find the reasons proffered to be credible and not pretextual.  Had the defense raised a challenge based on comparisons to similar white jurors whom the Government did not challenge and lack of support in the record for the explanations offered by the Government, perhaps the District Court would have inquired and investigated further, and made a different ruling.  But the defense made no such argument.  Accordingly, the District Court's failure to scour the record of over six weeks' worth of jury selection on its own for evidence of discriminatory intent unassisted by Baskerville did not constitute plain error.[3]  The error about which Baskerville complains with respect to the District Court's analysis is, instead, attributable to his own failure to point out weaknesses in the proffered reasons when the opportunity arose.

Moreover, we do not find the points of comparison between jurors that Baskerville urges to be so blatant that the District Court should have easily recognized that the Government's reasons lacked credibility.  There are significant differences, aside from

---

[3] "Comparative analysis is one of many tools that a court may employ to determine whether the government exercised its peremptory challenges for a discriminatory purpose.  Trial courts, however, are not required to conduct such an analysis." *United States v. You*, 382 F.3d 958, 969 (9th Cir. 2004).

their race, between the white jurors with whom Baskerville would have us compare the challenged black jurors that justify their differential treatment. For example, the prosecution struck Juror 47/72 not solely because of her attitudes toward the death penalty, which Baskerville argues were similar to those of several white jurors. Rather, the prosecution also explained that Juror 47/72 failed to answer critical parts of the juror questionnaire, a non-issue with respect to the purportedly similar white jurors. Furthermore, the prosecution struck Juror 33/36 because her sister was serving a federal drug sentence not unlike that which Baskerville himself faced. The white juror to whom Baskerville compares Juror 33/36, however, had relatives who only served state sentences for crimes less like Baskerville's in their nature and severity. The record is replete with examples like these, which satisfy us that the prosecution's reasons were not obviously pretextual and that, in any event, the District Court did not plainly err in concluding that Baskerville had not proven discriminatory intent.

Baskerville's portrayal of the prosecution's race-neutral reasons as either mischaracterizations of the record or simply untrue does not lead us to reconsider. First, the misstatements which Baskerville believes show the prosecution's insincerity were immaterial to the overriding reasons offered in support of its peremptory strikes. Second, and more importantly, the relevant question at the third step of the *Batson* inquiry is the "honesty – not the accuracy – of a proffered race-neutral explanation." *United States v. Yarrington*, 640 F.3d 772, 779 (7th Cir. 2011) (internal quotation marks omitted). As a result, the District Court's findings are generally afforded considerable deference. *See Batson*, 476 U.S. at 98 n.21 ("Since the trial judge's findings in the context under

9

consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.").  Here, the District Court explicitly deemed the explanations credible after observing first-hand the prosecutor's demeanor and other relevant factors.  We fail to see how a few minor inaccuracies in those explanations render its finding somehow plainly erroneous.

The voir dire notes produced by the Government do not demonstrate otherwise.  We agree with the District Court's consideration of the notes' effect, or lack thereof, on the *Batson* analysis.  Merely making notes of a juror's race, as the prosecution did, is insufficient alone to support a finding of discriminatory intent.  Similarly, the grading system used by the prosecutors, without more, does not lead us to conclude that the Government intentionally discriminated.

Accordingly, having found no plain error, we will affirm the District Court's ruling with respect to Baskerville's *Batson* objection.

### III.  Forfeiture-By-Wrongdoing

Baskerville contends that the District Court erred by admitting McCray's statements pursuant to FRE 804(b)(6).  We disagree.  The District Court's admission of McCray's statements did not constitute error because the Government's proffer made a sufficient showing of Baskerville's actions, and intent, to procure McCray's unavailability.

The forfeiture-by-wrongdoing exception excludes from the ban on hearsay any "statement [by an unavailable declarant] offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the

10

declarant as a witness." Fed. R. Evid. 804(b)(6). "To admit a statement against a defendant under the rule, therefore, the government must show (1) that the defendant engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability." *United States v. Scott*, 284 F.3d 758, 762 (7th Cir. 2002). Like all evidentiary rulings, the District Court's admission of statements under this exception is reviewed for abuse of discretion. *See United States v. Ammar*, 714 F.2d 238, 247 (3d Cir. 1983).

The District Court did not abuse its discretion by failing to hold a full pretrial hearing because the process it followed adequately protected against improper admission of McCray's statements. The District Court requested a proffer to demonstrate that McCray's statements should be admitted subject to the necessary connection being made at trial. In response, the Government named several witnesses who would offer evidence that Baskerville sought McCray's murder to beat drug charges. Defense counsel only challenged their credibility, not the sufficiency of the showing the prosecution anticipated making at trial. Perhaps if the Government's proffer had given the District Court reason to doubt its ability to actually deliver this proof at trial, an evidentiary hearing may have been in order. However, under these particular circumstances, we cannot say that the District Court abused its discretion by proceeding without one.

We have upheld this procedure with respect to the admission of co-conspirator statements under FRE 801(d)(2)(E) and find no convincing reason to treat statements like McCray's differently. Baskerville argues that, unlike co-conspirator statements,

11

statements admitted under the forfeiture-by-wrongdoing exception lack sufficient indicia of reliability. But a pretrial hearing over whether a party secured a declarant's unavailability to prevent testimony does not bear on the reliability of the statements themselves. Where, as here, a defendant is charged with killing a witness to prevent him from testifying – which requires a showing akin to that required under FRE 804(b)(6) – the procedure used by the District Court is an acceptable way to avoid wasting judicial resources by conducting in effect a trial before the trial. *See United States v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999). The District Court should therefore retain discretion to determine whether a pretrial hearing is necessary or not.

The reasonableness of the District Court's decision to forgo a mini-trial on the admissibility of McCray's statements is substantiated by the sufficiency of the Government's Rule 804(b)(6) showing.[4] The evidence introduced at trial supports the District Court's ruling that the Government adequately proved Baskerville's role in securing McCray's unavailability with the intent to prevent his testimony. Our discussion of Baskerville's sufficiency of the evidence claim below more fully demonstrates this to be the case. Suffice it to say here, though, that the prosecution showed that Baskerville, at the very least, acquiesced in McCray's murder with an eye

---

[4] As the District Court noted, this Court has yet to decide the appropriate evidentiary standard for admitting statements pursuant to FRE 804(b)(6). We decline to decide that issue here. Under either a clear and convincing evidence standard or a preponderance of the evidence standard, the Government's showing sufficed.

toward preventing his conviction on drug conspiracy charges.[5]  We cannot therefore hold that the District Court abused its discretion by admitting the statements under the forfeiture-by-wrongdoing exception to hearsay.

## IV.  Sufficiency of the Evidence

Baskerville contends that the prosecution introduced insufficient evidence of his intent to prevent McCray from testifying to support his murder conspiracy convictions. Our review of the record demonstrates that sufficient evidence was introduced at trial for the jury to determine that Baskerville acted with the requisite intent.

Baskerville shoulders a heavy burden to succeed on his insufficiency-of-the-evidence claim.  In reviewing a conviction for sufficiency of the evidence, "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "We do not 'weigh evidence or determine the credibility of witnesses in making this determination.'" *United States v. McBane*, 433 F.3d 344, 348 (3d Cir. 2005) (quoting *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir. 2000)).  "'Only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.'" *United States v.*

---

[5] By finding the Government's 804(b)(6) showing adequate, we simultaneously foreclose Baskerville's Confrontation Clause claim because "[a] defendant forfeits the constitutional right to confront a witness when, through his misconduct, he causes the witness to be unavailable." *United States v. Martinez*, 476 F.3d 961, 967 (D.C. Cir. 2007) (internal quotation marks omitted) (citing *Davis v. Washington*, 547 U.S. 813, 833 (2006); *Crawford v. Washington*, 541 U.S. 36, 62 (2004)).

*McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) (quoting *Brandom v. United States*, 431 F.2d 1391, 1400 (7th Cir. 1970)).

There was sufficient evidence from which a jury could have found that Baskerville intended to prevent McCray from testifying at his trial. Testimony from Anthony Young, the gunman who shot McCray, supported the jury finding that Baskerville directed Bergrin to pass along McCray's identity to several associates after identifying him as the informant. Further testimony by Young indicated that the associates to whom McCray's identity was passed understood the message to be an instruction from Baskerville to have McCray killed. Baskerville's cellmate corroborated as much when he testified that Baskerville admitted responsibility for the murder because without McCray the prosecution had no drug case against him. This and other evidence, if credited by a jury, could easily lead it to conclude, beyond a reasonable doubt, that Baskerville participated in the conspiracy to murder McCray with intent to prevent him from testifying at trial.

Accordingly, we will affirm Baskerville's convictions for conspiring to murder a witness and conspiring to retaliate against an informant.

## V. *Brady* Violation

Baskerville argues that the prosecution committed a *Brady* violation by failing to disclose evidence that Bergrin participated in murders of witnesses in unrelated cases. We find no *Brady* violation and will therefore affirm the District Court's denial of Baskerville's motion for a new trial.

In *Brady v. Maryland* and its progeny, the Supreme Court held that a defendant's constitutional right to due process is violated when the prosecution suppresses evidence

14

favorable to the defendant that is material to either guilt or punishment. *See United States v. Walker*, --- F.3d ----, 2011 WL 4035767, at \*19 (3d Cir. Sept. 13, 2011) (citing *Brady v. Maryland*, 373 U.S. at 87). "[T]o establish a *Brady* violation requiring relief, a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). The

> touchstone of materiality is a "reasonable probability" of a different result . . . . The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The District Court denied Baskerville's motion for a new trial because it found the evidence at issue to be neither favorable to the defense nor material to Baskerville's guilt or punishment. Our review of its denial of the motion for a new trial on *Brady* grounds is *de novo* with respect to legal conclusions and is for clear error with respect to findings of fact. *See United States v. Milan*, 304 F.3d 273, 286 (3d Cir. 2002).

We agree with the District Court's treatment of Baskerville's *Brady* claim. Evidence that Bergrin helped retaliate against witnesses in other cases would not have proved favorable to the defense. Bergrin's participation in other witness murders is

15

consistent with the prosecution's theory of the case, which was that Baskerville set in motion a plan to murder McCray that involved both his associates and lawyer. Indeed, the evidence corroborates the way in which the prosecution proved Baskerville's responsibility for McCray's murder: presenting evidence that he sent the murder message to associates on the outside via Bergrin. Baskerville's claim that the evidence would have helped show that Bergrin acted alone is flatly contradicted by the agent's certification upon which he bases his argument, which states that Bergrin "*assisted clients* in identifying, locating and murdering witnesses." This is precisely what the prosecution showed Bergrin did at Baskerville's trial.

Nor is the undisclosed evidence material to Baskerville's guilt, i.e., it does not undermine our confidence that the jury would have arrived at a guilty verdict had it been privy to the lawyer's role in other witness killings. The jury heard from several witnesses, each of whom testified to incriminating statements by Baskerville that belied any suggestion that he was only a mere beneficiary of the murder conspiracy, rather than an essential member of it. Information suggesting that Bergrin had experience securing witness executions and therefore could have acted independently of Baskerville would have done little to diminish the active role that other evidence proved Baskerville played in McCray's murder. Accordingly, even if the evidence upon which Baskerville bases his *Brady* claim might arguably have aided his defense, its utility would have been far outweighed by contradictory evidence.

Accordingly, we will affirm the District Court's denial of Baskerville's motion for a new trial.

## VI. <u>Conclusion</u>

For the foregoing reasons, we will affirm the District Court's judgment of conviction.