# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,      )
                           )

       v.                  )
                           )

OTIS PHILLIPS,           )  ID NO. 1210013321
                           )

      Defendant.       )

On the State's Motion in *Limine* to Admit Evidence of Forfeiture by Wrongdoing Pursuant to D.R.E. 804(b)(6). **GRANTED.**

# <u>ORDER</u>

John Downs, Esquire, Deputy Attorney General, Department of Justice, 820 North French Street, Seventh Floor, Wilmington, Delaware 19801. Attorney for the State.

Anthony A. Figliola, Esquire, 1813 Marsh Road, Ste A, Wilmington, Delaware 19801. Michael C. Heyden, Esquire, 1201 King Street, Wilmington, Delaware 19801. Attorneys for Defendant Otis Phillips.

**Scott, J.**

## Introduction

This is the Court's ruling on the State's motion in *limine* in which the State seeks to admit statements from Herman Curry ("Curry"), a deceased victim in this case, under the forfeiture-by-wrongdoing exception to the hearsay rule. Defendants Otis Phillips and Jeffrey Phillips were indicted by a grand jury for two counts of Murder in the First Degree, and other related charges, including Conspiracy in the First Degree, for the deaths of Curry and Alexander Kamara. Otis Phillips was also indicted for a third count of Murder in the First Degree for the death of Christopher Palmer ("Palmer"). The Court has considered the testimony presented in the August 19, 2013 Proof Positive Hearing, the State's motion and Defendant Otis Phillips' opposition, brought by and through counsel. For the following reasons, the State's motion is **GRANTED.**

## Background[1]

On January 27, 2008, Palmer was fatally shot. When police arrived, they contacted Curry, who had called 911 to report the shooting. Curry stated that he was celebrating his birthday when two black males walked up to his building. He asked if they needed anything, but the men stated that they were fine. Within a few minutes, five more black men arrived and knocked on the door to the building. Curry heard Palmer inform the men that the party was over. One of the men said,

---

[1] These facts are based on the Court's understanding of the facts proffered by the State at this stage.

"Shoot him." One of the men pulled out a gun and began firing rounds at Palmer. When Curry yelled out toward the group, they began firing in his direction. Curry escaped, ran into another room, and locked the door. Curry was familiar with the men and knew them to be members of the "Sure Shots" gang. He later identified Otis Phillips as the shooter in a photo lineup.

On July 8, 2012, there was a soccer tournament held at Eden Park in Wilmington, Delaware. At about 2:30 p.m., police responded to reports that shots had been fired in the recreational area in the park. Witnesses observed a man matching Otis Phillips' description walk through the park, head directly toward Curry, tap him on the shoulder, and shoot him multiple times in the chest. Five police witnesses positively identified Otis Phillips as the person who shot Curry. Four police witnesses positively identified Jeffrey Philips as being with Otis Phillips and firing his handgun into the crowd.

During a conversation with a witness, Jeffrey Phillips stated that "[Herman Curry] was trying to take [Otis Phillips] down for a murder that [Otis Phillips] committed and [Otis Phillips] said that [Herman Curry] needed to be taken care of."[2]

## Discussion

Hearsay is inadmissible unless an exception applies.[3] A statement is hearsay

---

[2] State Mot. in *Limine* at ¶ 15.
[3] D.R.E. 802.

3

if it "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[4] The various exceptions to the hearsay rule include D.R.E. 804(b)(6), the exception for forfeiture by wrongdoing. Under D.R.E. 804(b)(6), hearsay is admissible when the declarant is unavailable[5] and when the "statement [is] offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."[6] D.R.E 804(b)(6) tracks its federal counterpart,[7] which codified the common-law doctrine of forfeiture by wrongdoing.[8] That doctrine "permitted the introduction of statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant."[9] In addition to hearsay considerations, the U.S. Supreme Court has also recognized that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."[10]

Federal and state courts applying the exception have required that the government prove by the preponderance of the evidence[11] "(1) that the defendant

---

[4] D.R.E. 801(c).

[5] D.R.E. 804(a) provides examples of witness unavailability (*e.g.*, death).

[6] D.R.E. 804(b)(6).

[7] D.R.E. 804(b)(6) Comment; *See Younger v. State*, 496 A.2d 546, 551, n.5 (Del. 1985)("The Delaware Uniform Rules of Evidence track the Federal Rules of Evidence").

[8] *Giles v. California*, 554 U.S. 353, 367 (2008).

[9] *Id.* at 359.

[10] *Davis v. Washington*, 547 U.S. 813, 833 (2006).

[11] *See* Fed. R. Evid. 804(b)(6) advisory committee's note; *Davis,* 547 U.S. at 833 ("We take no position on the standards necessary to demonstrate such forfeiture, but federal courts…have generally held the Government to the preponderance of the evidence standard… State courts tend to follow the same practice…").

engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrong doing did procure the unavailability."[12]  The element of intent has been interpreted by courts and commentators to mean that "'the defendant ha[d] in mind the particular purpose of making the witness unavailable.'"[13]  However, it has also been held that the "Government need not [] show that the defendant's sole motivation was to procure the declarant's absence; rather it need only show that the defense 'was motivated *in part* by a desire to silence the witness'"[14]

This Court has applied the forfeiture-by-wrongdoing exception in *State v. Charbonneau*.[15]  In September of 2001, John Charbonneau ("John") disappeared. Thereafter, William Sproates ("Sproates") contacted the police and expressed fear to the police that defendant, Linda Charbonneau ("Linda"), and two other individuals were involved in John's death.  Then, in October of 2001, Sproates disappeared.[16]  Linda and the two other individuals were charged with the capital murders of both John and Sproates and related counts of conspiracy; one of the two individuals accepted a plea offer.[17]

Linda and the remaining individual were tried separately.  Prior to their

---

[12] *U.S. v. Baskerville*, 448 Fed. Appx. 243 (3rd Cir. 2011).

[13] *Giles,* 554 U.S. at 367 (quoting 5 C. Mueller & L. Kirkpatrick, Federal Evidence § 8:134, p. 235 (3d ed. 2007)); *U.S. v. Gray,* 405 F.3d 227, 241 (4th Cir. 2005).

[14] *U.S. v. Dhinsa*, 243 F.3d 635,653 (2d Cir. 2001)(quoting *Houlihan,* 92 F.3d 1271, 1279 (1st Cir. 1996)).

[15] 2003 WL 22232811 (Del. Super. Sept. 24, 2003).

[16] *Id.* at *1.

[17] *Id.*

5

trials, they moved to sever their charges. In determining whether to sever the charges, the Court analyzed the cross-admissibility of the evidence based on the State's pretrial proffer.[18] The Court found that certain statements by Sproates in which he expressed fear about Linda would be admissible under D.R.E. 803(3)[19] and that other statements concerning John's disappearance would be admissible under D.R.E. 804(b)(6).[20] The Court also performed the balancing test under D.R.E. 403,[21] finding that the probative value of the statements was "self-evident and not substantially outweighed by the danger of unfair prejudice…"[22]

During Linda's trial, the Court admitted Sproates' statements under Delaware Rules of Evidence 803(3), 804(b)(6) and 403. The evidence showed, *inter alia*, that Sproates saw bloody boxes, that Linda had learned that Spoates was actively questioning John's disappearance and showing others the bloody boxes, that she threatened him, and that she told the other two individuals that Sproates was getting close to finding out what happened and that something had to be done

---

[18] *Id*. at *6.
[19] D.R.E. 803(3) provides for the admissibility of hearsay where the statement is "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will."
[20] *Id.* at *6.
[21] D.R.E. 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."
[22] *Charbonneau*, 2003 WL 22232811 at *6.

with him.[23]  Based on this evidence, the Court found that "Linda (i) was involved in killing Sproates as a conconspirator and an aider and abetter, and (ii) Linda acted with the intent of procuring Sproates's unavailable as a potential witness at any trial concerning John's murder."[24]  On appeal, the Supreme Court found that the trial court did not abuse its discretion in making its rulings under D.R.E. 803(3), 804(b)(6), and 403.[25]

Based on the testimony presented at the Proof Positive Hearing and the facts proffered by the State, the Court will admit Curry's statements.  The facts strongly suggest that it was Otis Phillips who killed Curry by firing multiple shots at him on July 8, 2012.  Several witnesses described a man matching Otis Phillips' description as the person who walked up to Curry and shot him multiple times on July 8, 2012 at Eden Park.  Therefore, the Court finds that Otis Phillips engaged in wrongdoing which resulted in Curry's unavailability; thus, two of the elements required for admissibility under Rule 804(b)(6) have been met.

As for the remaining element, the Court finds that it is likely that Otis Phillips shot Curry the intent to procure his unavailability as a witness.  Curry was the 911 caller who reported Palmer's shooting to the police.  Curry also witnessed the men who came to the door and called out to them before the group began firing at him.  He later identified Otis as the man who shot Palmer.  In addition, Jeffrey

---

[23] *Charbonneau v. State*, 904 A.2d 295, 318 (Del. 2006).
[24] *Id.*
[25] *Id*. at 318-19.

Phillips suggested that Otis Phillips took care of Curry for trying to take Otis Phillips down for a murder that he committed.[26] Under these facts, the Court finds that Otis Phillips was aware that Curry was a witness who would be able to testify about Palmer's shooting and that, when he shot Curry, he was "motivated at least *in part* by a desire to silence" Curry as a witness to Palmer's murder.[27]

As in *Charbonneau*, the probative value of Curry's statements as it relates to the motive for Curry's murder is "self-evident" and it does not substantially outweigh the risk of unfair prejudice. Furthermore, the statements are not unnecessarily cumulative of the evidence. They evidence a motive for the shooting.

## Conclusion

For the foregoing reasons, the State's motion is **GRANTED.** The Court reserves the right to revisit this decision based upon the testimony presented at trial as well as other hearings in this case.

**IT IS SO ORDERED.**

*/s/ Calvin L. Scott*
**Judge Calvin L. Scott, Jr.**

**Date: July 9, 2014**

---

[26] State Mot. in *Limine* at ¶ 15.
[27] *Dhinsa*, 243 F.3d at 653.

8