IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARTHUR DAVIS, | § | |
| | § | No. 223, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2201003180 |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: April 30, 2025
Decided: June 26, 2025

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS**, Justices.

## <u>ORDER</u>

After consideration of the parties' briefs and the record on appeal, and following oral argument, it appears to the Court that:[1]

(1) Appellant Arthur Davis was charged with various crimes stemming from three domestic violence incidents with his child's mother, Andrea Brown. In the months leading up to trial, both Davis and the State contacted Brown numerous times about testifying. Davis, through threats and manipulation, encouraged Brown to not testify, to testify falsely, or to recant her allegations against him. At the same

---

[1] The facts of this case are undisputed. *See* Oral Argument Video at 1:20–30, available at https://courts.delaware.gov/supreme/oralarguments/ (Davis's Counsel: "[T]he facts are not in dispute in this case."). The facts are drawn from the transcripts of the pretrial conference and trial, as well as the exhibits from trial, unless otherwise noted.

time, the State attempted to persuade Brown to participate in the proceedings and testify. Despite the State's efforts to procure Brown's attendance at trial, the State determined that it was unlikely that she would appear. With Brown's attendance uncertain, the State filed a motion *in limine* to introduce certain out-of-court statements that Brown made to law enforcement. The Superior Court granted the motion, finding that the State established that Brown was "unavailable" under Delaware Rule of Evidence 804(a)(5) and that Davis, through wrongful conduct, intended to, and did, procure Brown's unavailability under Rule 804(b)(6). With Brown's statements in evidence, a jury found Davis guilty on numerous charges. Davis now appeals. He contends that the Superior Court erred in admitting Brown's statements at trial. We disagree and affirm.

(2) The three domestic-violence incidents at issue occurred between December 2020 and January 2022. During the first incident in December 2020, Davis appeared at Brown's residence, acting hostile toward her. While arguing, Davis grabbed an object and struck the windshield of Brown's car, breaking the glass. She called 911 and reported to police that Davis was "acting crazy." During the second incident in July 2021, Davis entered Brown's residence without permission, purportedly to visit his child. When Davis refused to leave, Brown tried to leave in her car. But before she drove away, Davis threw a soda bottle at her car. When she got out of the car, Davis poured the soda on her. Brown chased Davis

2

away with mace, but he returned shortly thereafter and initiated a physical altercation with her. Brown told one of her children to call 911, and police soon arrived to find Brown distraught and disheveled. The final incident occurred in January 2022. By this time, Brown had obtained a no-contact order against Davis. Despite the no-contact order, Davis entered Brown's residence without permission, became upset, punched her television, and then left. Brown's children were present for this incident.

(3) Several months later, Davis was charged and arrested for the three incidents.[2] Davis was indicted on the following counts: stalking; criminal mischief (two counts); criminal trespass first degree; assault third degree; endangering the welfare of a child (three counts); burglary first degree; non-compliance with bond conditions; act of intimidation; and breach of conditions of bond during commitment (three counts).[3] Unable to post bail, Davis remained incarcerated while awaiting trial. A pretrial conditions order was issued requiring Davis to have no contact with Brown.

(4) On a recorded phone line from prison, Davis repeatedly contacted Brown to dissuade her from participating in his upcoming trial. At the same time, the State was contacting Brown to persuade her to testify at Davis's trial. Because

---

[2] App. to Opening Br. at A1 (Superior Court Docket) (Dkt. 1).

[3] *Id.* at A6–11 (Indictment). The State later dismissed one count of breach of conditions of bond during commitment. *Id.* at A461 (Aug. 16, 2023 Tr.).

3

the content of these communications are central to the resolution of the issues in this appeal—namely, whether the State undertook appropriate efforts to procure Brown's availability at trial and whether Davis engaged in wrongdoing that was intended to, and did, procure her unavailability—we provide a timeline and summary of the relevant communications:[4]

September 30, 2022: Davis tells Brown to contact his cousin to replace Brown's television that Davis punched. Davis then tells Brown to recant her statements made to police and notify the State that she wants no involvement with the case and the charges dropped.

October 5, 2022: Davis tells Brown that the State will reach out to her and that she should inform the State that she wants the charges against him dismissed.

October 8, 2022: Davis directs Brown to write a letter to the State, declaring that she recants all statements made against Davis and wants the charges against him dropped.

October 12, 2022: Davis dictates to Brown the substance of an affidavit that he wants Brown to execute and deliver to the courthouse. Davis tells Brown to include in the affidavit that she recants all statements made against Davis, wants the charges against him dropped, and does not want to participate in the case.

October 17, 2022: Brown tells Davis that courthouse personnel did not accept the affidavit and directed her to deliver it to the State. Davis yells at her for not leaving the affidavit with courthouse personnel.

October 19, 2022: Brown speaks with a social worker from the State and says that she delivered an affidavit requesting that the State dismiss the charges against Davis.

---

[4] This timeline does not capture every contact that Davis made with Brown. The calls between Davis and Brown were recorded and made part of the trial record.

4

October 27, 2022: Brown speaks with a social worker and a prosecutor from the State and admits that Davis pressured her to author and deliver the affidavit.

October 29, 2022: Brown notifies Davis that she spoke with the State. Davis yells at her for doing so.

May 3, 2023: Davis tells Brown that she is not doing enough to get him out of prison and back to his child.

June 23, 2023: A social worker from the State contacts Brown to discuss a plea offer that the State presented to Davis. Brown says that she is reluctant to testify but will do so if Davis rejects the plea offer.[5]

June 26, 2023: Davis rejects the plea offer.[6] The same day, a social worker from the State contacts Brown and notifies her that Davis rejected the plea offer. Brown agrees to appear for a trial preparation meeting on July 6.

June 27, 2023: Davis tells Brown that, if there is no victim, there is no case.

June 29, 2023: Davis calls Brown, and an unidentified person on the call tells Brown to reiterate to the State that she wants nothing to do with the case and wants all charges against Davis dropped. Davis tells Brown that she needs to "fix" her story. Davis also suggests that Brown may need to appear at trial and testify that Davis did not damage her property and that she wants all charges dropped.

June 30, 2023: Davis tells Brown that she will get restitution for her television. Davis also tells Brown to stop answering calls from the State, and Brown says that she will not appear at trial. Davis says that, if she does not appear for trial, then the State cannot prosecute him.

July 6–12, 2023: Brown fails to attend the trial preparation meeting. On July 6 and 7, a social worker from the State attempts to reach Brown by phone, but the attempts are unsuccessful. On July 12, the social worker

---

[5] There is a discrepancy regarding the date of this contact. The State's motion states that it occurred on June 20, but the trial court's ruling states that it occurred on June 23.

[6] App. to Opening Br. at A2 (Superior Court Docket) (Dkt. 10).

reaches Brown by phone, but Brown ends the call when the social worker identifies herself.

July 17, 2023: Davis tells Brown that the prosecutor will attempt to use Brown's statements to police during trial. Davis directs Brown to write a letter to the State expressing that she lied about the events leading to Davis's arrest.

July 20, 2023: The State mails a subpoena to Brown's residence, mandating Brown to appear for trial on August 14.

August 1, 2023: Davis becomes angry with Brown and tells her that he typically must beat her up to get her to do what he wants.

August 7, 2023: The State sends an investigator to Brown's residence and Brown's mother's residence to deliver subpoenas requesting that Brown appear for a trial preparation meeting on August 9 and that Brown immediately contact the State. Brown did not appear for the August 9 meeting or contact the State.

(5)    On August 9, 2023, less than one week before trial, the State moved *in limine* to introduce out-of-court statements made contemporaneously by Brown around the times of the domestic violence incidents. Law enforcement had captured these statements on body-worn-camera videos and 911-call recordings. In its motion, the State argued that, despite reasonable efforts to procure Brown's attendance, she was unavailable under Delaware Rule of Evidence 804(a)(5).[7] The State further contended that Davis procured Brown's unavailability, making Brown's out-of-court statements admissible under Rule 804(b)(6)'s forfeiture-by-wrongdoing exception to the rule against hearsay.[8] Davis responded to the motion

---

[7] *See id.* at A25–26 (State's Motion *in limine*).

[8] *Id.* at A27–33 (State's Motion *in limine*).

by claiming that the State did not satisfy Rule 804(a) because it did not seek a material-witness warrant to procure Brown's attendance at trial.[9] Davis also argued that he did not engage in wrongdoing or attempt to procure or cause Brown's unavailability.[10]

(6)  On the day of trial, the Superior Court granted the State's motion.[11] It highlighted the State's successful and unsuccessful contacts with Brown in its efforts to procure her attendance at trial. The court also provided a timeline of the numerous prison calls between Davis and Brown for the period of September 2022 through August 2023. The court then found that the State proved, by a preponderance of the evidence, that Brown was unavailable under Rule 804(a)(5) because the State established that it had not been able "by process or other reasonable means" to procure her attendance.[12] The court also found that Rule 804(a)(5) did not require

---

[9] *Id.* at A63–65 (Davis's Response to Motion *in limine*).

[10] *Id.* at A68–71 (Davis's Response to Motion *in limine*).

[11] The Superior Court heard argument from the parties before jury selection on August 14. App. to Opening Br. at A86–121 (Aug. 14, 2023 Tr.). And on August 15, Davis restated his position opposing the State's motion before the court granted it. *Id.* at A217–23, A255–60 (Aug. 15, 2023 Tr.).

[12] *Id.* at A252 (Trial Court Ruling on Motion *in limine*) (The Court: "[T]he Department of Justice spoke to [Brown] several times about testifying. The follow-up included the normal course of process. They provided subpoenas for trial prep and trial. They called and she hung up when she knew it was the [Department of Justice's] social worker. The [Department of Justice] investigator went to . . . two residences and -- on August 7th, to appear for trail prep on August 9th, and that she contact the Department of Justice office immediately, and that the trial date was to begin on the 14th. The [c]ourt finds this is enough to establish that the State has not been able, by process or other reasonable means, to procure her attendance.").

7

the State to issue a material-witness warrant.[13]  The court then found that the State satisfied Rule 804(b)(6) because Davis's prison calls were intended to, and did, procure Brown's unavailability.[14]

(7)     The parties proceeded to a jury trial.  There, the State offered into evidence Brown's out-of-court statements.  Once the State rested, Davis moved for judgment of acquittal on all charges.  The court granted Davis's motion, in part, as to third-degree assault and one count of endangering the welfare of a child.  The jury found Davis guilty as to eight counts and not guilty as to three counts.[15]  Before sentencing, the State moved to declare Davis a habitual offender, which the Superior Court granted.[16]  In May 2024, the Superior Court sentenced Davis to an aggregate

---

[13] *Id.* at A255 (Trial Court Ruling on Motion *in limine*) (The Court:  "I reject the notion that the State must seek a material witness warrant to establish the declarant is unavailable under 804(a).").

[14] *Id.* at A263–66 (Trial Court Ruling on Motion *in limine*) (The Court:  "In the present case, the defendant calls Brown more than 20 times persuading her not to testify, at times to -- to come to court when he realized that perhaps the State could proceed without her presence.  There was pleas, apologies, demands, yelling, directing, orchestrating, commanding her and scripting his instructions to the victim, at times angrily.  He also cried.  Other times with precision and wordsmithing, the use of others was also here to coach her and others that were speaking to her outside on his behalf.  And, lastly, the guilt that he had served enough time and needed to get back to their child. . . .  And, lastly, including that he had to beat her when she doesn't do what he asks her to do, which here included either submitting a letter, an affidavit, or lying about what she told police in court. . . .  For these reasons, the victim's out-of-court statements are admissible under Rule 804(b)(6), and the defendant has forfeited his confrontation rights.").

[15] The jury found Davis guilty of: stalking; burglary first degree; criminal mischief (one count); non-compliance with bond conditions; endangering the welfare of a child (one count); act of intimidation; and breach of conditions of bond during commitment (two counts).  App. to Opening Br. at A584–87 (Verdict); *id.* at A4 (Superior Court Docket) (Dkt. 24).  The jury found Davis not guilty of: criminal mischief (one count); criminal trespass first degree; and endangering the welfare of a child (one count).  *Id.* at A584–87 (Verdict); *id.* at A4 (Superior Court Docket) (Dkt. 24).

[16] *Id.* at A4–5 (Superior Court Docket) (Dkts. 28, 31).

of twenty-eight years in prison, suspended after nine years for decreasing levels of supervision.[17] Davis has appealed.

(8) On appeal, Davis argues that the Superior Court erred in admitting Brown's out-of-court statements at trial. Specifically, Davis contends that the State did not meet its burden under Rule 804(a)(5) because the State did not issue a material-witness warrant to procure her attendance at trial. Davis also contends that the court erred when it found that the State satisfied its burden under Rule 804(b)(6) because the State failed to establish that Davis engaged in wrongdoing, intended to procure Brown's unavailability, or did procure it. The State responds that the court correctly found that the State did not need to issue a material-witness warrant to satisfy Rule 804(a)(5) and that it satisfied all elements of Rule 804(b)(6). We review a trial judge's evidentiary ruling based on Rule 804(a)(5) and (b)(6) for abuse of discretion.[18]

(9) Rule 804 covers exceptions to the rule against hearsay when the declarant is unavailable as a witness. In seeking to introduce Brown's out-of-court

---

[17] *See* Ex. C to Opening Br. (Corrected Sentence Order). The charges and convictions most relevant in this appeal relate to criminal ID number 2201003180. Davis, in another matter, pled guilty to one count of strangulation and one count of endangering the welfare of a child. That matter is criminal ID number 2206008364. Davis's May 2024 sentencing pertained to both matters, but Davis has not appealed the latter matter. *See* Dkt. 4 at 1 (Notice of Appeal).

[18] *Phillips v. State*, 154 A.3d 1130, 1143 (Del. 2017) (citing *Charbonneau v. State*, 904 A.2d 295, 318 (Del. 2006)); *Iverson v. State*, 326 A.3d 1169, 2024 WL 4039927, at *4 (Del. Sept. 4, 2024) (TABLE) (stating that abuse of discretion applies to an analysis under Rule 804(a)(5) and (b)(6)).

statements, the State first had to establish that Brown was unavailable under Rule 804(a), which provides that "[a] declarant is considered to be unavailable as a witness if the declarant: . . . (5) [i]s absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means to procure the declarant's attendance." "Generally, the proponent must show a good-faith, genuine, and bona fide effort to procure the declarant's attendance."[19] The proponent—here, the State—must satisfy its burden by a preponderance of the evidence.[20]

(10) The primary question on appeal is whether issuing a material-witness warrant was necessary in this case to satisfy the "reasonable means" requirement in Rule 804(a)(5). The short answer is no. Within the past year, this Court held in a similar case, *Iverson v. State*, that a "material-witness warrant was unnecessary" to satisfy Rule 804(a)(5). In *Iverson*, this Court emphasized that the State needed to use "*reasonable* means" to procure the domestic-violence victim's attendance at trial.[21] There, the State "attempted to subpoena [the witness], called her, and sent an investigator to her home when she missed a trial preparation meeting[.]"[22] The Court

[19] *Moss v. State*, 166 A.3d 937, 2017 WL 2806269, at *4 (Del. June 28, 2017) (TABLE).

[20] *Iverson*, 2024 WL 4039927, at *4 (citing *State v. Miller*, 2020 WL 4355557, at *8 (Del. Super. July 30, 2020)).

[21] *Id.* at *5 (emphasis in original).

[22] *Id.*

10

concluded that the State's efforts amounted to a "good-faith, genuine, and bona fide effort" to procure the witness' attendance and that a material-witness warrant was unnecessary.[23] The same is true here.

(11) In our view, the State's actions constituted a "good-faith, genuine, and bona fide effort to procure"[24] Brown's attendance by employing "process or other reasonable means."[25] The State made multiple successful and unsuccessful attempts to contact Brown via phone.[26] When she proved unresponsive as trial approached, the State mailed a subpoena for trial[27] and sent an investigator to deliver subpoenas to her residence and her mother's residence for trial preparation.[28] These efforts are sufficient to satisfy the State's burden. The State was not required to issue a material-witness warrant to satisfy Rule 804(a)(5) in this case. We are unconvinced by Davis's argument that we should follow the Oregon Supreme Court's decision in

---

[23] *Id.* (quoting *Moss*, 2017 WL 2806269, at *4).

[24] *Moss*, 2017 WL 2806269, at *4.

[25] DRE 804(a)(5).

[26] In June 2023, a social worker spoke with Brown regarding Davis's plea offer. Brown indicated that she was reluctant to testify but would do so if Davis rejected the plea offer. A few days later, after Davis rejected the plea offer, the social worker contacted Brown to notify her of the plea rejection and that the State would move forward with trial. Brown indicated that she understood and agreed to appear for a trial preparation meeting on July 6. Brown did not show up on July 6, so the social worker attempted unsuccessfully to reach Brown by phone. The social worker made additional unsuccessful attempts to reach Brown by phone over the next week.

[27] On July 20, the State mailed a subpoena to Brown's residence, mandating Brown to appear for trial on August 14.

[28] On August 7, a State investigator delivered a subpoena to Brown's and Brown's mother's residences, requesting that Brown appear for a trial preparation meeting on August 9 and to immediately contact the State.

11

*State v. Iseli*, which—based on the specific facts there—affirmed a trial court decision requiring a material-witness warrant to satisfy Oregon's rule for establishing unavailability.[29] We follow *Iverson*.

(12) Having established that Brown was unavailable, the State next had to prove that Rule 804(b)(6)'s forfeiture-by-wrongdoing exception applied to make Brown's statements admissible. That exception applies when the statement is being "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."[30] The State must prove: "(1) that the defendant engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability."[31] The State's burden of proof is a preponderance of the evidence.[32]

(13) Here, all three elements are satisfied. Davis argues that his actions did not constitute wrongdoing. He contends that because this Court in *Phillips v. State* found wrongdoing when the defendant killed the witness, Davis's actions here do

---

[29] 458 P.3d 653, 669–70 (Or. 2020) ("[T]he additional facts about the defendant's wrongful conduct in causing the victim's nonattendance underscored the likelihood that the victim would not attend trial, thus supporting—together with the other factors—the trial court's conclusion that 'other reasonable means' in this case included seeking a material witness warrant or a remedial contempt order.").

[30] DRE 804(b)(6).

[31] *Phillips*, 154 A.3d at 1143 (quoting *United States v. Baskerville*, 448 F. App'x 243, 249 (3d Cir. 2011)).

[32] *Iverson*, 2024 WL 4039927, at *4 (citing *Miller*, 2020 WL 4355557, at *8).

not constitute wrongdoing as they did not rise to such a level. The plain language of the rule contemplates mere "wrongdoing"—murder is not the threshold to establish wrongdoing. We find that Davis engaged in wrongdoing in various ways. He directed Brown to get his charges dropped, which included reciting the contents of an affidavit that he had her execute and deliver to the State. He attempted to persuade her not to come to trial, or to come to trial and change her story. He even used others to attempt to dissuade her from testifying. He attempted to encourage her with money, telling her to seek restitution from his cousin for the property that he damaged. He attempted to emotionally manipulate her, telling her that she was not doing enough to get him out of prison for the sake of their shared child. He also yelled at her and made threats, stating that he usually needed to beat her to get what he wants. And Davis contacted Brown despite that a no-contact order remained in place during his communications with her. Taken collectively, these actions are sufficient to establish that Davis engaged in wrongdoing.[33]

(14) Likewise, the other elements are satisfied—through his actions, Davis intended to, and did, procure Brown's unavailability. Davis argues that he did not

---

[33] *See, e.g.*, *id.* at *1, *4–5 (finding the defendant's actions sufficient to establish wrongdoing where the defendant: asked the witness to deliver an affidavit to the Department of Justice stating that she did not want the defendant charged for his actions against her; used others to tell the witness that she did not have to comply with a subpoena to testify at trial; told the witness that if she did not show up to trial then the State would drop the case; and told the witness that she should come to trial and speak on his behalf).

intend to procure Brown's unavailability because he told her to appear at trial. But Davis told Brown to appear at trial and change her story, suggesting that she testify that Davis did not burglarize her residence. Davis also told Brown not to cooperate with the State, evidenced by his repeated statements to Brown where he directed her to either (a) stop talking to the State or (b) communicate that she did not want to be involved in the case. He thus intended to procure her unavailability. And he did indeed procure it. Brown did not attend trial. That Brown wavered about whether to cooperate with the State does not save Davis.[34] The record shows that Davis's actions substantially impacted Brown's ultimate decision not to appear for trial. The Superior Court did not err in finding that the State satisfied Rule 804(b)(6).

(15) Finally, Davis argues that the Superior Court violated his constitutional confrontation rights when it admitted Brown's out-of-court statements.[35] This argument is meritless. The United States Supreme Court has held that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to

---

[34] For instance, the Supreme Judicial Court of Massachusetts has held that "[w]here a defendant actively assists a witness's efforts to avoid testifying, with the intent to keep the witness from testifying, forfeiture by wrongdoing may be established regardless of whether the witness already decided on [her] own not to testify." *Commonwealth v. Szerlong*, 933 N.E.2d 633, 638–39 (Mass. 2010) (alteration in original) (internal quotation marks omitted).

[35] Opening Br. at 7 ("As a result of the [c]ourt's ruling Davis was forced to have a trial by videotape and lost the right to confront the most important witness against him."); *id.* at 8 ("The trial court's ruling that Davis' wrongdoing procured [Brown]'s unavailability and thus admitting her out-of-court statements under D.R.E. 804(b)(6), was erroneous under Delaware law and violated Davis' right to confrontation under the Sixth Amendment to the U.S. Constitution, Del. Const., art. I § 7 and due process rights to a fair trial under the Fourteenth Amendment.").

14

confrontation."[36] This Court adopted that same reasoning in *Phillips*.[37] Having found that Rule 804(b)(6)'s forfeiture-by-wrongdoing exception applies in this case, we also find that Davis surrendered his right to confront Brown.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[36] *Davis v. Washington*, 547 U.S. 813, 833 (2006).

[37] *Phillips*, 154 A.3d at 1143 ("In *Davis v. Washington*, the United States Supreme Court reiterated what is said in *Crawford*: that the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." (alteration in original) (internal quotation marks omitted)). To the extent that Davis argues that the court violated his confrontation rights by not holding an evidentiary hearing and relying on the prosecutor's statements, *see* Opening Br. at 9–10, that argument also fails. The court accepted the representations from the prosecutor because she is an "officer of the court." App. to Opening Br. at A243 (Trial Court Ruling on Motion *in limine*); *see also Chapman v. State*, 962 A.2d 256, 2008 WL 4750342, at *2 (Del. Oct. 30, 2008) (TABLE) (accepting representation by defendant's counsel, as "an officer of the Court," regarding the circumstances surrounding the defendant's execution of a waiver of his rights to be present during the verdict). And the subpoenas sent to Brown and the recordings of certain prison calls are part of the trial record. It would have been prudent for the State to have submitted a sworn statement from the social worker, but the outcome does not change for lack of such statement.

Additionally, in his briefs, Davis argued that the Superior Court violated his right to compulsory process. During oral argument, Davis's counsel "surrender[ed]" this argument. Oral Argument Video at 39:45–40:30. Nonetheless, we note that Davis's trial counsel represented to the Superior Court that he did not intend to call Brown as a witness at trial. *See* App. to Opening Br. at A111 (Pretrial Conference) (The Court: "[A]re you intending to call [Brown] as a witness?" Trial Counsel: "I am not."). Thus, Davis's right to compulsory process was not violated. *See Brown v. State*, 729 A.2d 259, 263 (Del. 1999) ("A criminal defendant has the right to compulsory process to obtain the appearance of witnesses to testify on his behalf."), *overruled in part on other grounds*, *Priest v. State*, 879 A.2d 575 (Del. 2005).

15